AMERICAN LITHOTRIPSY
SOCIETY, Plaintiff,

v.

Louis W. SULLIVAN, M.D., and Gail
R. Wilensky, Ph.D., Defendants.

Civ. A. No. 92–0268.

United States District Court,
District of Columbia.

March 12, 1992.

Michael Joseph, Thomas L. Mills, E. Alex Blanton, Joseph O. Click, Washington, D.C., for plaintiff.

Edith S. Marshall, Marina Utgoff Braswell, Asst. U.S. Attys., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Plaintiff, a national association of persons providing Extra–Corporeal Shock Wave Lithotripsy ("ESWL") on an outpatient basis to patients eligible for Medicare benefits, challenges a final notice of the Health Care Financing Administration ("HCFA") that classifies ESWL as a surgical procedure and sets a prospective Medicare rate for ESWL performed in ambulatory surgical centers ("ASCs"). *See* 56 Fed.Reg. 67666 (Dec. 31, 1991). Plaintiff has moved to preliminarily enjoin enforce-

ment and implementation of the notice pending completion of this litigation. The issues were thoroughly briefed and argued. Facts material to a decision on the merits are not in dispute. As a result, as was suggested by the Court and the plaintiff at oral argument, the Court has determined that it can dispose of the case on the merits, pursuant to Fed.R.Civ.Pro. 65, and remand to the agency for further consideration.

### Background

The Medicare program, which is administered by HCFA, generally pays for outpatient services based on the lower of the costs or customary charges of the outpatient facility providing the service. *See* 42 U.S.C. § 1395*l* (a)(2). However, if HCFA has designated a particular treatment a "surgical" procedure that can safely be performed on an outpatient basis, the Medicare payment is based, at least in part, on a prospective, rather than a cost/charge, rate. *See* 42 U.S.C. § 1395*l* (i). The prospective rate is set by HCFA according to its calculation of what a fair fee would be, taking "into account the costs incurred ... in providing services furnished in connection with the performance of such procedure...." 42 U.S.C. § 1395*l* (i).

ESWL is a relatively new medical procedure that pulverizes kidney stones with shock waves, and thereby allows them to be excreted naturally. Until December 1991, HCFA had not included ESWL on the list of surgical procedures that could safely be performed on an outpatient basis. In June 1989, HCFA had concluded that ESWL "is only safe with a carefully selected patient population, and that it will continue to be an inpatient procedure for the majority of patients." 54 Fed.Reg. 23540, 23545 (June 1, 1989). Moreover, HCFA stated in the same notice that it was "not yet convinced that ESWL can be categorized as a 'surgical' procedure." *Id.*

As ESWL became safer and easier to perform, HCFA continued to consider its appropriate classification. In December 1990, HCFA proposed adding ESWL to its list of surgical procedures appropriately performed on an outpatient basis at ASCs,

suggested a rate of $812, and invited comments on "facility charges and costs associated with providing lithotripsy services in an ASC." 55 Fed.Reg. 50590, 50594 (Dec. 7, 1990). A large number of comments were submitted to HCFA during this informal rulemaking, and they all indicated that a much higher rate should be adopted. More than 100 of the 177 commenters suggested rates in excess of $2500.

HCFA apparently found that the cost information submitted in the comments was incomplete or otherwise insufficient. *See* Declaration of Bernadette Schumaker, Def. Ex. B, at ¶ 19. As a result, HCFA thereafter undertook its own study to project what the cost would be for ESWL performed in ASCs. Until that time, ESWL had rarely if ever been performed in ASCs. In compiling the data for its study, HCFA consulted a number of people and organizations with relevant information. *See id.* at ¶¶ 19–31; 56 Fed.Reg. at 67673–74. However, HCFA did not make that data, as well as some of the basic assumptions used in its calculations, available for comment. On the contrary, even as late as the time of the hearing on the preliminary injunction, defense counsel stated that the agency had still been unable to locate or compile all the information it had gathered pursuant to the agency's private investigation.

Nonetheless, on December 31, 1991, HCFA published final notice that it had decided to designate ESWL a "surgical" procedure, and it set a rate of $1150 for ESWL performed in ASCs, effective January 30, 1992. *See* 56 Fed.Reg. 67666 (Dec. 31, 1991). A slightly higher rate, based partly on costs and charges, was set for outpatient ESWL performed through a hospital. Plaintiff filed its complaint in this Court on January 30, 1992.

### The Merits

■ Plaintiff first challenges HCFA's decision to designate ESWL a surgical procedure for purposes of Medicare reimbursement. The Court can find nothing wrong with that determination. HCFA had earlier determined that it was "not yet convinced that ESWL can be categorized as a

'surgical' procedure." 54 Fed.Reg. 23540, 23545 (June 1, 1989). By its plain language, however, that determination was not definitive. ESWL was at the time, and remains even now, a relatively new procedure. In its recent final notice, HCFA gave a number of reasons why it considers ESWL a surgical procedure, none of which the Court finds unreasonable. Moreover, as is evident from the record, the American Medical Association and the American Urological Association consider ESWL a surgical procedure. *See* Declaration of Barton C. McCann, M.D., M.P.H., Def. Ex. A, at ¶¶ 10, 13, 17–18. Certainly, the Court cannot substitute its own judgment for the expert opinion of the agency, especially when such prominent medical organizations agree with the agency. The decision to classify ESWL as a surgical procedure was properly noticed; comments were received; and the final notice rationally justified the decision.

■ Plaintiff's second, and more significant, challenge to the final notice is in regard to the manner in which the rate was set for outpatient ESWL.[1] HCFA admits in the final notice that it consulted "several lithotripsy facilities and lithotripter manufacturers to identify resources consumed in performing ESWL." 56 Fed.Reg. at 67674. It is clear that HCFA must have done extensive research on its own to come up with the rate published in the final notice, because the final rate was more than $350 below the lowest amount submitted by any of the commenters, and less than half as much as the rate submitted by the majority of commenters. Yet none of that research appeared in the rulemaking record. Nor did HCFA provide the public a chance to comment on the methodology the agency used to derive a rate from the data that had been collected, even though the cost model HCFA developed assumed a utilization rate for lithotripsy machines of almost

twice the current utilization rate.[2] Indeed, even after the reimbursement rate for outpatient ESWL was published, when plaintiff requested the information HCFA had relied on in setting the rate, HCFA produced only the written comments. None of the information obtained by HCFA as the result of its own research was made available. As of the time of the motion for preliminary injunction, that information still had not been compiled or released.

■ The suggestion of counsel for the defendants that the public record for purposes of a rulemaking includes anything that is eventually made available to the public through a FOIA request or that is presented to a reviewing court at some time prior to a disposition on the merits flies in the face of established law. This Circuit has made it clear that the public must have an opportunity to comment on information that is material to an agency's decision in a rulemaking *before* the final rule is published. *See Sierra Club v. Costle*, 657 F.2d 298, 397 (D.C.Cir.1981); *Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9, 52–58 (D.C.Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). One of the primary reasons for having a comment period is to provide an opportunity for "adversarial discussion among the parties." *Home Box Office*, 567 F.2d at 55. Simply providing the reviewing court with the information does not obviate the need for interested persons to have a chance to comment. The Court lacks the expertise to decide whether or not agency action, especially in fields as arcane and specialized as Medicare law and medical procedures, is reasonable, unless it has the benefit of adversarial discussion in the rulemaking record. Similarly, the agency itself cannot function properly without having the benefit of such comments before it makes any final decisions.

---

**1.** In light of the Court's decision to remand, plaintiff's contention in regard to the consultation requirement is no longer ripe.

**2.** Not only did HCFA not notice the fact that it was, for the first time, using the concept of "efficient utilization" to project a hypothetically possible ASC cost for a certain medical proce-

dure, it also did not notice the fact that it intended to depart so radically from current use rates of lithotripsy machines. Certainly, there are questions of distribution and availability of machines that must be addressed by adversarial comments in light of the drastically higher utilization rate projected by HCFA.

There is no such adversarial comment in the present record because, by defendants' own admission at the hearing, information crucial to the final notice was never put in the record in sufficient time to allow comment. The case must therefore be remanded. The agency must publish the data and other information it is relying on in setting a rate and allow time for comment before issuing final notice, which is to be done promptly. The current notice is stayed pending publication of a final notice pursuant to the remand.

An appropriate Order accompanies this Memorandum.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that the final notice setting a rate for lithotripsy, published at 56 Fed. Reg. 67666 *et seq.* (Dec. 31, 1991), is remanded for further consideration. On remand, the Secretary shall publish all material information relevant to the setting of the rate, receive comments, and publish a final notice in accordance with the applicable statutes and regulations. The remand shall be accomplished promptly; and it is further

ORDERED that pending publication of the final notice pursuant to the remand, the final notice published December 31, 1991, insofar as it relates to lithotripsy, is stayed; and it is further

ORDERED that plaintiff's motion for preliminary injunction is moot; and it is further

ORDERED that the complaint is dismissed.